***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for the following modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The Hartford Insurance Company is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $423.61, yielding a compensation rate of $282.41.
5. Plaintiff was out of work on medical leave from February 23, 2001 until April 2, 2001.
6. On or about April 2, 2001, plaintiff was returned to light duty work; however, defendant-employer was unable to provide plaintiff with suitable work, pending a reduction in plaintiff's pain medication.
7. In June 2001, defendant-employer terminated plaintiff's employment.
8. Plaintiff has received no disability benefits from defendants.
 ISSUES
(a) Whether plaintiff sustained a compensable workplace injury on February 23, 2001?
(b) Whether plaintiff is entitled to disability benefits?
(c) Whether plaintiff is entitled to medical treatment?
(d) Whether plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1?
 *********** EXHIBITS
The following exhibits were admitted into evidence:
(a) Stipulated Exhibit 1: Pre-Trial Agreement
(b) Stipulated Exhibits 2-6: Plaintiff's medical records
(c) Stipulated Exhibit 7: Defendants' discovery production
(d) Stipulated Exhibit 8: Plaintiff's medical bills
 (e) Stipulated Exhibits 9 and 10: Never admitted because not submitted post-hearing.
 *********** EVIDENTIARY RULING
Plaintiff's Motion to Admit New Evidence in the form of an affidavit from Charles Napier of Napier Std. Auto Sales, Inc. and an affidavit from plaintiff is hereby granted and the affidavits are made a part of the evidentiary record.
 ***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a twenty-seven year old male with a high school education. Plaintiff has worked almost exclusively in warehouse receiving and packaging jobs.
2. Plaintiff began working for defendant-employer, Bailiwick Data Systems, in March 2000, in the Receiving Department. Plaintiff's job duties included operating a forklift to unload and store materials; packaging and moving steel material; and controlling inventory.
3. On February 23, 2001, plaintiff was operating a forklift to unload pallets off the back of a truck. Some of the pallets began to fall off the forklift as plaintiff was moving them. To avoid being hit by the falling pallets, plaintiff grabbed the top of the driver's compartment, twisting to avoid contact with the pallets, and swung himself out of the forklift.
4. Plaintiff did not feel back pain immediately. He finished the remainder of his shift, went home, took a shower, ate supper, and went to bed.
5. The following morning, Saturday, February 24, 2001, plaintiff could not get out of bed because of the pain in his back. Later that morning, plaintiff's wife helped him get out of bed to move to the couch where plaintiff watched television for much of the day. Plaintiff took over-the-counter pain medication. Plaintiff telephoned defendant-employer and left a voice mail message for Phil Marks, indicating that he had injured his back and needed to see a doctor.
6. On Monday, February 26, 2001, at approximately 5:30 a.m., before the beginning of his shift, plaintiff called defendant-employer and left a message for Rick Fanney, Human Resources Manager. Plaintiff stated in his voice mail message that he was going to see a doctor about his back.
7. Plaintiff went to his 9:00 a.m. appointment with Dr. Vinod Singh, an internist. After waiting several hours to see Dr. Singh, plaintiff was finally told that Dr. Singh would not be able to see him that day. Plaintiff's appointment was rescheduled for the following day.
8. At his appointment on February 27, 2001, Dr. Singh took plaintiff out of work pending further evaluation and prescribed pain medication. Due to the fact that plaintiff's back pain did not improve, Dr. Singh referred plaintiff for an MRI scan of the LS spine, which was performed on March 17, 2001. The LS Spine MRI showed moderate disc degeneration at L5-S1, with an annular tear and small, central protrusion and bulging discs at L4, L5 and L2, L3. Dr. Singh kept plaintiff out of work and referred him to Dr. Charron, an orthopedist.
9. Dr. Singh testified that the February 23, 2001 forklift incident caused the injury to plaintiff's back.
10. On April 2, 2001, Dr. Charron diagnosed a lumbar back sprain and abnormal L5-S1 disc without nerve compression, prescribed pain medication, along with physical therapy, and returned plaintiff to light-duty work for four hours per day, with no lifting over 10 pounds.
11. Plaintiff returned to work for defendant-employer on April 2, 2001. However, defendant-employer sent plaintiff home on April 3, 2001, pending a reduction in his pain medication. Defendant-employer was concerned about plaintiff being around machinery while on pain medication.
12. Plaintiff returned to Dr. Charron on April 19, 2001 with continuing lumbar back pain. Dr. Charron recommended and plaintiff received lumbar epidural steroid injections.
13. On May 24, 2001, plaintiff returned to Dr. Singh complaining of continued back pain, which was not alleviated by the epidural steroid injections. Dr. Singh referred plaintiff to Dr. Craig T. Derian, an orthopedic surgeon, for evaluation and treatment. Plaintiff saw Dr. Derian for an evaluation of his back on June 28, 2001. Dr. Derian diagnosed plaintiff with internal disc disruption, degenerative disc disease at L5-S1. Dr. Derian recommended a walking and home exercise program, light-duty work with no heavy lifting or prolonged or repetitive bending or stooping, with the ability to change position frequently as needed.
14. Dr. Derian advised that plaintiff continue treating with Dr. Singh and, if his symptoms persisted for four to six months, then surgical intervention might be indicated.
15. Defendants retained Dr. Michael Gwinn, a physical medicine and rehabilitation doctor, to conduct an Independent Medical Evaluation, which took place on February 26, 2002. Dr. Gwinn agreed with the diagnosis given by Dr. Derian, and recommended light-duty work, with no lifting over 25 pounds, and avoidance of frequent bending and twisting. Dr. Gwinn also stated that additional, reasonable restrictions would include no prolonged sitting or standing, with movement, i.e., getting up or walking around, as needed. Dr. Gwinn did not controvert Dr. Derian and Dr. Singh's opinions with respect to causation.
16. Dr. Derian testified that if plaintiff decides to have surgery, he has not reached maximum medical improvement. However, Dr. Derian further testified that if plaintiff opts not to have the surgery, he is at maximum medical improvement with a ten percent (10%) permanent partial disability rating to his back and the following work restrictions: change positions frequently from sitting, standing, to walking, with no lifting greater than 25 pounds unassisted, and occasional lifting up to 20 pounds. In addition, plaintiff would have difficulty in sitting or standing for any prolonged period of time, which would include difficulty driving for more than one hour at a time.
17. Because plaintiff seeks authorization for back surgery, the Full Commission finds that plaintiff has not reached maximum medical improvement at this time.
18. After plaintiff had been out of work for approximately four months, employer-defendant terminated plaintiff's employment in June 2001. Following termination of his employment, plaintiff made a reasonable effort to find employment and successfully obtained part-time suitable employment on January 26, 2002 through March 26, 2002 working eight hours a week earning $6.00 per hour as a car salesman for Napier Std. Auto Sales.
19. Plaintiff has proven that he could obtain work which was both suitable work for his condition and which was available in the marketplace, thereby establishing that he has some partial wage earning capacity. Though he maintains he could not continue in this work after March 26, 2002 because of his back injury, this testimony is not accepted as credible as Dr. Derian who saw plaintiff on April 18, 2002 only reinforced work restrictions previously given for this twenty-eight year old man.
20. Based upon the foregoing, plaintiff was unable to earn the same or greater wages that he was earning at the time of his injury in the same or any other any employment from February 26, 2001 through and including April 1, 2001 and again from April 4, 2001 to the date that plaintiff returned to part-time suitable work as a car salesman on January 26, 2002. As of this date plaintiff established that he had a partial wage earning capacity when he earned less than his pre-injury average weekly wage.
21. Defendants denied this claim, and defended against its compensability, without reasonable ground.
 ***********
The foregoing findings of fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment on February 23, 2001. The evidence of record establishes a causal relationship between plaintiff's injury of February 23, 2001 and his back condition. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to temporary total disability compensation at the rate of $282.41 per week from February 26, 2001 through and including April 1, 2001 and from April 4, 2001 through and including January 26, 2002 when plaintiff returned to part-time suitable work as a car salesman. N.C. Gen. Stat. § 97-29.
3. Since plaintiff earned less than his average weekly wage while working as a car salesman as of January 26, 2002, he is entitled to temporary partial disability compensation at the rate of $250.42, which is two-thirds of the difference between plaintiff's average weekly wage and the amount earned prior to his injury. This amount shall be paid for 300 weeks after the date of injury or until plaintiff becomes totally disabled as a result of the anticipated back surgery. N.C. Gen. Stat. § 97-30.
4. Defendants are entitled to a credit for any unemployment benefits received by plaintiff for any week he is entitled to temporary or partial disability benefits. N.C. Gen. Stat. § 97-42.1.
5. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
6. In the discretion of the undersigned, plaintiff is not entitled to benefits under N.C. Gen. Stat. § 97-88.
7. Plaintiff is entitled to reasonable attorney's fees as the defense of this claim was not reasonable and was founded in stubborn litigiousness. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to any credit owed defendants for unemployment benefits received by plaintiff, defendants shall pay temporary total disability compensation to plaintiff at the rate of $282.41 per week from February 26, 2001 through and including April 1, 2001 and from April 4, 2001 to the date that plaintiff returned to part-time suitable work as a car salesman on January 26, 2002. Because this compensation has accrued, it shall be paid in a lump sum.
2. Defendants shall pay plaintiff temporary partial disability compensation at the rate of $250.42 as of January 26, 2002 when he began work as a car salesman and continuing for 300 weeks after the date of injury or until plaintiff becomes totally disabled as a result of the anticipated back surgery.
3. Defendants shall pay for medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including back surgery by Dr. Derian.
4. As plaintiff has not reached maximum medical improvement, this Opinion and Award does not address the issue of a permanent partial disability. However, if in the future the parties are unable to reach an agreement regarding this issue, either party may request a hearing from the Commission.
5. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the award due plaintiff is hereby approved for plaintiff's counsel to be paid as follows: Twenty-five percent (25%) of the accrued amount due plaintiff shall be paid directly by the defendants and shall not be deducted from the sums due plaintiff. Thereafter, every fourth check due plaintiff shall be sent directly to plaintiff's counsel.
6. Defendants shall pay the costs due the Commission.
This the 20th day of June 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER